Dillon, J.
Error to the police court of the city of Columbus.
The plaintiff was convicted in the police court for violating Section 7038, Revised Statutes Ohio, which forbids the transaction of business on the first day of the week, commonly called “Sunday.”
The plaintiff in that court claimed exemption from its operation by reason of the clause of said statute which expressly provides that the statute shall “not extend to persons who conscientiously observe the seventh day of the week as the Sabbath, and who do, in fact, abstain on that day from the doing of the things herein prohibited on Sunday.”
The evidence shows that the plaintiff in error is an orthodox Jew, and, as such, while he did beep his place of business open on Sunday, as a matter of fact, he did in good faith abstain from any such work, and did observe as his Sabbath a period of twenty-four hours commencing as soon after sun down as the stars appeared on Friday evening and ending at the same time on Saturday evening.
*277 The point in contention here is that this does not comply with the exceptions of the statute, but that in order to avail himself of this exception, a person must abstain the entire seventh day, to-wit,' from midnight of Friday night until midnight of Saturday night.
. The question, therefore, to be decided is what the Legislature meant in its use of the expression “seventh day of the week as the Sabbath.” The word “day” does not have any fixed and determined meaning, but its meaning must be determined always by the subject-matter. In an astronomical sense, it is the space of time in which the earth makes one revolution upon its axis. In its fullest sense, it means the time from one midnight to the next midnight, .that having been a convenient time adopted to divide one day from another. Again, it is often used in the popular sense of defining the time between sunrise and sunset as distinguished from night. It is also used in a more conventional sense as embracing only those hours which are sufficient for the discharge of one’s, work. And thus a man who agrees to work so many days at so much per day, will be expected to work the number of hours, to-wit, seven hours, eight hours, nine hours, or ten hours, as may be the custom with reference to that kind of work.
Even more restricted is the construction of the word “day” when it is used with reference to the payment of a note at a bank. The law gives such a person only that part of the day up to the close of banking hours, and thus such a day would end at about two or three o’clock in the afternoon.
The question, therefore, must not be arbitrarily determined by construing the word “day” as meaning from midnight to midnight, unless from a full consideration of the statute and its objects, that is the meaning and intent of the use of the word.
While it is true that legally considered, our Sunday act is a mere civil regulation having no connection with religion, and founded on principles of public policy alone, it nevertheless is most apparent that that particular day selected by the Legislature to enforce that salutary observance of one day of rest weekly, is the day mpst generally accepted by th§ large *278 majority of our citizens by reason of religious as well as civil custom as their day of rest.
The establishment of these days of rest is most ancient and is said to be even more ancient than Jewish and biblical history. There was such a day known and well established among.the Babylonians, among the Semitic-Assyrians, and even among the aboriginal tribes of Chaldea. The enforcement, however, by law of the observance of the first day of the week, commonly called Sunday, might subject the statute to the weakness of unconstitutionality unless it exempted from its operation those persons who conscientiously observed the seventh day of the week as the Sabbath. This was held in our own state in the case of City of Canton v. Nist, 9 Ohio St., 439, with reference to a city ordinance, in which an ordinance of the city of Canton, without such exception, was declared null and void.
A similar ordinance of the city of Cincinnati was held void as to those who conscientiously observed the seventh day of the week as the 'Sabbath, in the case of The City of Cincinnati v. Rice, 15 Ohio, 225.
In the case of People v. Bellet, 99 Mich., 151, the Supreme Court of Michigan upheld an act similar to the statute of Ohio, upon the theory that said act did not grant to any citizen or any class of citizens, privileges or immunities which did not belong equally to all citizens, but that the framers of the statute meant to leave it to the consciences and judgment of its citizens to judge between the first and the seventh day of the week, requiring, only that on one or the other of these days they must refrain from any labor.
What then is the meaning of the seventh day of the week? The Legislature clearly had in mind two and only two classes of citizen®. The Legislature found no other class of citizens whatsoever which needed any consideration by virtue of the constitutional privilege guaranteeing liberty of conscience and worship. These two classes consisted, .first, of those who conscientiously observe the first day of the week as a day of rest, and all other persons, who had no conscience in the matter whatever. The second class consisted solely of those who conscientiously observe the seventh day of the week as the Sabbath.
*279 The word “Sabbath” is from the Hebrew “Shabbath” and signified a “rest from labor.” It & mentioned first in Genesis ii. 2, 3, as the “seventh day..” It is mentioned in Exodus xvi. 23 as the “holy Sabbath,” and again in Exodus xx. 8, as a day to be kept holy.
From the beginning of the history of these people, i. e., Jews and Seventh D.ay Adventists, who have observed the seventh day to keep it holy, that day has * * * commenced at starlight upon Friday evening, and ended at starlight upon Saturday evening. This custom of the use of the word “Sabbath day,” and of its beginning and end, arose from the account of the creation of the world, beginning with Genesis i. 5, where after the long period of darkness and chaos, there was light. “And the evening and the morning were the first day.” And so on was- each day numbered as the evening and the morning, until the seventh day, and this last evening and morning, i. e., light following the darkness, was set apart as the day of rest, and has been so observed ever since by these people. It will be observed, therefore, that the statute has direct application to, and was meant to embrace and save from its operation the very people who have thus observed the seventh day, and it is significant that the section of the statute does not only mention the seventh day as a day, but makes this exemption applicable to the day as the Sabbath, distinguishing that word “Sabbath” from the other word “Sunday” used in the same act. While it is true that the words “Sabbath” and “Sunday” are often interchangeably used, yet they are not necessarily synonymous. It is the duty, of the court, therefore, to so construe this statute that two results will follow: First, that the statute itself be given such a construction as will make it constitutional, and second, that it be given such a construction as will carry out the manifest intent thereof, and exempt from its operation those persons who were intended to be exempted.
In the case of Johns v. The State, 78 Ind., 332, the court speaking of a similar statute in that state, says—
“It was not the purpose of the law makers to compel any class of conscientious persons to abstain from labor upon two days in every week. Without the proviso, a large number of *280 citizens would be compelled to lose two days of labor. * * * A leading and controlling element of our system of government is that there shall be’ absolute freedom in all matters of religious belief. The statute here under examination is framed in harmony with this all-pervading and controlling principle.”
F. C. Hedor, for plaintiff in error.
G. F. Cartier, for defendant in error.
It is self-evident, therefore, that if the meaning of the expression “seventh dlay as the Sabbath” means from midnight Friday night to midnight Saturday night, the proviso is useless; it applies to no one, and so far as the effect of the statute is concerned, is of no force or effect whatever. Of the manner and time of the worship of the Jews- and Seventh Day Adventists, the court takes judicial notice. With such knowledge, therefore, a Legislature must have acted, and intended when they referred to these people and their day of worship.
The conclusion which I have reached, therefore, is that the expression “seventh day of the week as the Sabbath” as used in said Section 7038 means that period of twenty-four hours ending at or about the appearance of the stars on Saturday evening.
The judgment of conviction will be set aside and the plaintiff in error discharged.